CHARLES A. EBERT *vs.* JOHN H. LONG.

May 5, 1890.

**Judgment—Allowance of Credits in Former Action.**—In execution of a judgment owned jointly by these parties certain land was sold. Long purchased it at the sale, and took the sheriff's certificate to himself. Ebert was equitably entitled to an interest therein, and to share in the money that might be paid for redemption. In an action by Long against Ebert for the recovery of money, Long allowed to Ebert a credit of $794 on account of Ebert's interest in that matter, and deducted it from the amount of his claim. This credit was set forth in a bill of particulars served in the action. *Held*, that Ebert, by not disclaiming or rejecting this allowance of credit, is to be deemed to have accepted it; and, after a recovery by Long in that action, Ebert was precluded from recovering from Long a share of the money afterwards paid for redemption from the execution sale.

Appeal by defendant from a judgment of the district court for Hennepin county and from an order by *Hicks, J.,* refusing a new trial.

*Andrew T. Keyes,* for appellant.

*Chas. A. Ebert (pro se)* and *Henry Ebert,* for respondent.

DICKINSON, J.[1] In March, 1887, a judgment for the recovery of

---

[1] Mitchell, J., took no part in this case.

money was secured in favor of one Conway Hodsdon against one Ebenezer A. Hodsdon. Soon thereafter this judgment was assigned to the parties to this action. In January, 1888, upon a sale of certain lands under execution issued to enforce that judgment, this defendant, Long, purchased the property in his own name and in his own behalf, and received the sheriff's certificate of sale, in which he (Long) was named as the purchaser. The amount bid upon such sale was the amount of the Hodsdon judgment then unpaid. Long paid no money upon such purchase, but applied the judgment, then owned by himself and this plaintiff, in making such purchase. It has been found by the court that the purchase by the defendant in his own name, and by the appropriation of the judgment for that purpose, was not authorized by the plaintiff. Prior to the expiration of the period for redemption from that execution sale the plaintiff commenced this action, in which he sought the judgment of the court declaring him to be a cotenant with the defendant in the interest acquired by the execution sale represented by the sheriff's certificate of sale; that, as respects his interest therein, the defendant be adjudged to hold such certificate as trustee for the plaintiff; and that, in case of redemption from such sale, the plaintiff be adjudged to be entitled to receive such part of the redemption money as should correspond to his interest in the judgment and certificate of sale. Upon the findings of the court, in accordance with the plaintiff's claim, judgment was entered in his favor for the recovery of a specified proportion of the redemption money, the judgment reciting the fact that the money required to make redemption had then been paid to the sheriff. Hence, on this appeal by the defendant, attention will be directed particularly to the right of the plaintiff to receive the proportion of the redemption money awarded by the court, the same being a little less than one-half of the whole amount paid to the sheriff for redemption.

The principal question here presented is whether the matter in issue, and the ground of the recovery allowed, were so involved in other litigation between these parties, and in the judgment therein, as to have become *res judicata*. The prior adjudication referred to was in an action prosecuted by this defendant, Long, against this

plaintiff, Ebert, to recover more than $2,000 for services alleged to have been rendered by the former for the latter. The complaint in that action admitted the payment, on account of such services, of the sum of $1,050. A bill of particulars was served by the plaintiff in that action, setting forth the items of the charges upon which recovery was sought, and also several items of credit allowed by him (Long) in reduction thereof. Among the items of credit shown in that statement, constituting a part of the credit allowed by plaintiff in his complaint, was the following, which refers to the Hodsdon judgment above mentioned: "Deft. interest in Hodsdon v. Hodsdon judgment, $794." The answer of this plaintiff, Ebert, in that action, denied the alleged value of such services, averred that such services as were rendered were rendered under an agreement that for all services to be rendered by Long he was to be compensated in a special manner, (particularly stated,) and that he had been compensated in that manner. Matter of counterclaim or set-off was also pleaded. Upon the trial of that action, in May, 1888, the plaintiff, Long, recovered a verdict, upon which judgment was rendered for about $550. It appears that on the trial of that action Long testified that Ebert "had an interest in a judgment for $794. The land was sold and the certificate taken in my name. I have given him credit on here [probably referring to his bill of particulars] for that $794." He was cross-examined as to Ebert's knowledge of the land having been purchased by Long in his own name, and testified that it had been agreed that it should be so done. The defendant, Ebert, testifying in his own behalf, denied this. In the general charge of the court in that action allusion was made to "payments" as a matter for the consideration of the jury.

It may be conceded that the action of Long against Ebert, which may be designated as the former action between these parties, did not involve the issue as to whether Ebert was in the contemplation of equity an owner, in common with Long, of the sheriff's certificate of sale, and interested, in common with Long, in the land which the latter had purchased under execution; that there has been no prior adjudication as to that matter; and that by the decision in this action it has been for the first time formally and judicially determined

that Ebert had any such interest or right.    But in this action the
defendant pleaded, in effect, among other things, that the amount of
the plaintiff's interest in the Hodsdon judgment was deducted from
the amount of this defendant's demand, whose recovery was for only
the remainder thus found due to him.    The evidence presented in
this case, and to which we have referred, sustains this contention of
the defendant, and there was no evidence opposed to this.    It is true
that as Ebert's right and interest, after the execution sale and before
redemption, was a right and interest in respect to the *land,* and not
merely in respect to the money which might thereafter be paid for
redemption,—it might be that no redemption would be made,—he
could not have been compelled to accept from Long an equivalent in
money, and to surrender his interest in respect to the land.    But he
might do so voluntarily.    And this, we think, the case shows he did
do in effect.    In the former action, involving matters of account be-
tween the parties, Long unequivocally admitted Ebert's interest with
himself in the matter here in issue growing out of the Hodsdon judg-
ment, and formally allowed $794 to be credited to Ebert in that ac-
tion, with some other items of credit, in reduction of his demand
against Ebert.    No other construction could be put upon this than
that Long intended, by allowing that sum to be credited to Ebert in
the judicial adjustment of their accounts, to thus satisfy his obliga-
tion to Ebert in respect to the interest of the latter in the matter of
the Hodsdon judgment.    It was not a mere gratuitous deduction of
$794 from his account against Long.    The credit given in that man-
ner by Long, in the account sued on, would be treated by the jury,
as a matter of course, as a credit and payment *pro tanto* unless in
some manner the other party should disclaim or reject this allowance,
which, considering only the matters then in issue, was for the appar-
ent benefit of the latter.    Under such circumstances, for Ebert to go
on with the trial and submission of the case to the jury without re-
nouncing that credit, must be deemed an acceptance of it,—a consent
that it be allowed in his favor.    No such disclaimer appears to have
been made, and we find nothing in the case to oppose the conclusion
to which the facts which we have stated naturally lead.

Treating this credit of $794, on account of this plaintiff's interest

in the matter of the Hodsdon judgment, as having been allowed and taken into account in the former action with his consent, the conclusion follows that the recovery in this action, embracing the same matter, cannot be sustained. The plaintiff having once voluntarily realized the benefit of this claim in a manner then presumably satisfactory to him, and the other party having for this purpose relinquished from his own demand the amount thus allowed to the plaintiff, the latter cannot again recover upon the same cause of action. From the fact, recited in the judgment, that redemption has been made from the execution sale, it is apparent that the plaintiff's remedy in this action must be practically limited to a recovery of a share of the redemption money; and the judgment is to that effect. The practical result of the action cannot be different from what it would have been if redemption had been made before this action was commenced, and the plaintiff had sought in this action no other remedy than a recovery of a share of the redemption money. It can hardly be doubted that in such an action a recovery would be denied if it should appear that the amount which this plaintiff would otherwise have been entitled to receive had been allowed to him as a credit to offset or satisfy *pro tanto* other obligations in favor of this defendant, in the manner above shown.

The judgment must be set aside, and the order refusing a new trial reversed.